# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| TABITHA LYNN SUMMERS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:14-0173 |
| | ) Judge Sharp |
| TIFFANY TEAGUE, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM

Magistrate Judge Bryant has entered a Report and Recommendation ("R & R") (Docket No. 65), recommending that the Motions for Summary Judgment filed by Defendants VandenBosch, Roberts, Pater, and Oliveri (Docket Entry Nos. 26, 29, 31 and 33) be granted. In response, Plaintiff has filed a "Reply to Judge's Ruling on Summary Judgment" (Docket No. 70) and an "Amended Response" (Docket No. 72), both of which the Court construes as objections. Additionally, Defendants have filed a Joint Motion to Ascertain Status or for Clarification (Docket No. 66).

**A. Reply to Judge's Ruling on Summary Judgment (Docket No. 70)**

Plaintiff first objects to the failure to address her claim for the wrongful opening of legal mail. While the opening of legal mail was not discussed in the R & R, summary judgment is appropriate on this claim.

In support of their Motions for Summary Judgment, and in accordance with this Court's Local Rule 56.0(c), Defendants Pater, Self, VandenBosch, Oliveri, Bevans, Roberts, and Goodwin filed a Joint Statement of Undisputed Material Facts. (Docket No. 28). That filing set forth the following facts, supported by affidavits from Defendants:

1

> 39. Defendants Pater, Bevans, Oliveri, Roberts, Goodwin and Self have had no involvement in the opening, reading, or processing of mail, legal or otherwise, addressed to or sent by Tabitha Summers. While Defendant VandenBosch has some supervisory responsibilities with regard to mail and may have on occasion responded to inquiries from jail staff about mail for Summers and others, he has never opened, read, or otherwise been involved with the processing of Summers's legal mail. (VandenBosch Aff. ¶ 7; Pater Aff. ¶ 7; Bevans Aff. ¶ 10; Oliveri Aff. ¶ 13; Roberts Aff. ¶ 8; Goodwin Aff. ¶ 8; Self Aff. ¶ 7).

(Docket No. 35-1 at 18 ¶ 39).

Under this Court's Local Rules, a party opposing summary judgment is required to "respond to each fact set forth by the movant immediately below each fact," and either agree that the fact is undisputed or show a genuine dispute by "specific citation to the record." L.R. 56.01(c). "Failure to respond to a moving party's statement of material facts . . . shall indicates that the asserted facts are not disputed for purposes of summary judgment." L.R. 56.01(g).

Plaintiff did not respond to Defendants' Statement of Undisputed Facts. Indeed, even after that deficiency was pointed out in Defendant's Reply, Plaintiff did not respond to the factual statements, even though she filed what effectively was a sur-reply.

The Court recognizes that Plaintiff is proceeding *pro se* and, as such, is entitled to some indulgences. See Haines v. Kerner, 404 U.S. 519, 522 (1972), However, "Plaintiff's status as a *pro se* litigant does not discharge h[er] from adhering to the requirements of the Federal Rules of Civil Procedure nor the local Rules for this District." Kister v. Kelly, 2015 WL 1412407, at *5 (S.D. Ohio Mar. 26, 2015); see Ellis v. United States, 2016 WL 379802, at *4 (W.D. Tenn. Jan. 29, 2016) (citation omitted, collecting cases) ("'Although district courts may liberally construe the federal and local rules for pro se litigants, even pro se litigants are obligated to follow these rules.'").

Plaintiff's failure to respond aside, she has not presented sufficient evidence from which a jury could find in her favor on this claim.

The Sixth Circuit has recently reviewed its case law regarding the opening of legal mail, writing:

> We have consistently held that "the opening of 'legal mail' should generally be in the inmate's presence." Kensu v. Haigh, 87 F.3d 172, 174 (6th Cir. 1996) (citing Wolff v. McDonnell, 418 U.S. 539, 576–77, 94 S. Ct. 2963, 41 L. Ed.2d 935 (1974)). Although "prison officials may open prisoners' incoming mail pursuant to a uniform and evenly applied policy with an eye to maintaining prison security," Lavado v. Keohane, 992 F.2d 601, 607 (6th Cir. 1993), "when the incoming mail is 'legal mail,' we have heightened concern with allowing prison officials unfettered discretion to open and read an inmate's mail," Sallier v. Brooks, 343 F.3d 868, 874 (6th Cir. 2003). A "prisoner's interest in unimpaired, confidential communication with an attorney is an integral component of the judicial process and, therefore, ... as a matter of law, mail from an attorney implicates a prisoner's protected legal mail rights. See Kensu, 87 F.3d at 174 (referring to a prisoner's right to protect the contents of correspondence with an attorney as a 'fundamental right')." Id. at 877.

ACLU v. Livingston Cty., 796 F.3d 636, 642-43 (6th Cir. 2015).

In support of her mail claim, Plaintiff relies on an Affidavit from attorney Drew Justice. In that Affidavit, Mr. Justice states that he recalls "at least one time when [he] received legal mail from [plaintiff] while she was at the jail, and her envelope had already been opened [and] had then been re-taped shut, with clear tape." (Docket No. 43 at 1). The most that shows is that mail was opened, not that any of the Defendants (each of whom deny under oath opening Plaintiff's mail) were responsible. Plaintiff's bald assertion that "they are not telling the truth" and that "all Defendants "are responsible for handling mail" (Docket No. 41 at 7) is not evidence and does not suffice to rebut Defendants' Affidavits or present a genuine issue of material fact.

Plaintiff also asserts that Defendant VandenBosch, in his Affidavit, "clearly admits to be custodian of records and also admits to have been addressed [sic] a few time over Plaintiff's mail." (Id. at 7). She also notes that, in response to a grievance, VandenBosch "clearly responds . . . by saying they can open legal mail to determine if it is legal." (Id.).

3

VandenBosch's role as a custodian of records has nothing to do with whether he unlawfully opened mail. The fact that he "addressed" Plaintiff's grievances about opened mail, in and of itself, proves nothing. The complaints covered by the grievances dealt with the alleged opening of mail by persons other than him, and Plaintiff has proffered no proof that he "'encouraged the specific incident of misconduct or in some other way directly participated in it.'" Coley v. Lucas Cty., 799 F.3d 530, 542 (6th Cir. 2015) (quoting Taylor v. Mich. Dep't of Corrs., 69 F.3d 76, 81 (6th Cir. 1995)).

A couple of remarks on the grievance forms that Plaintiff attributes to Defendant VandenBosch are a bit over broad. This includes the statements that "mail can be opened and scanned to determine if it is legitimate legal mail," and "you have been misinformed about the opening of legal mail[,] we did nothing wrong" (Docket No. 1 at 40 & 44). But those responses must be read in context. One grievance dealt with a complaint about "Mrs. Jones" that involved what Plaintiff characterized as a letter to "an advisor" who was helping Plaintiff get "legal information," and opined that outgoing mail could "not . . . be opened whether it is legal or not[.]" (Docket No. 1 at 40). The other was a complaint about "Cpl. Burke" and contained various assertions, including that "outgoing mail marked legal or not is not to be opened, it can be X-rayed but not opened." (Id. at 44). Moreover, it is not even apparent that Plaintiff's complaints were limited to legal mail because, at times, she references mail from TennCare and Social Security that she claims to be "important mail from State Offices." (Id. at 44) (emphasis in original).

When the facts (as opposed to unadorned speculation) are drawn in Plaintiff's favor, she has failed to show that any of the named Defendants unlawfully opened her legal mail or encouraged or participated in the unlawful opening of her mail. As a consequence, Defendants are entitled to

4

judgment on this claim.

For her second objection, Plaintiff writes:

> 2) Medical neglect for inappropriate prompt care when plaintiff had know [sic] mental health issues and facility employees failed to give emergency transportation to a psychiatric facility after plaintiff was seen at [the] Emergency Room in Williamson Medical Center. Plaintiff (Tabitha Summer's [sic]) was returned to facility Williamson Co. Jail and not promptly transported to a psychiatric hospital when a 6404 was granted by ER physician.

(Docket No. 20 at 2).

Negligence is not the proper standard. Rather, for both pretrial detainees and convicted felons, the standard is one of deliberate indifference. Baynes v. Cleland, 799 F.3d 600, 608 (6th Cir. 2015)(collecting cases). "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick v. Thompson, 131 S.Ct. 1350, 1360, (2011).

With regard to the law regarding deliberate indifference, the Sixth Circuit has recently observed:

> Under the deliberate indifference rubric, a plaintiff must satisfy both objective and subjective components. Blackmore v. Kalamazoo Cty., 390 F.3d 890, 895 (6th Cir.2004). The plaintiff must objectively show that he is "incarcerated under conditions posing a substantial risk of serious harm" and must subjectively show that the named prison official had 'a sufficiently culpable state of mind in denying medical care.' Id. (citations omitted). "Satisfying the objective component ensures that the alleged deprivation is sufficiently severe, while satisfying the subjective component 'ensures that the defendant prison official acted with a sufficiently culpable state of mind." Quigley v. Tuong Vinh Thai, 707 F.3d 675, 681 (6th Cir. 2013) (citation omitted).

Shaver v. Brimfield Twp., No. 15-3089, 2015 WL 5845941, at *3 (6th Cir. Oct. 8, 2015).

Insofar as Plaintiff generally complains about the care she received at the jail, that claim fails. According to Defendants, jail records show that, during her ten month stay at the Williamson

5

County Jail, Plaintiff was (1) assessed, evaluated and/or treated 110 times by the Jail's contract medical provider, Southern Health Partners; (2) evaluated by the Mobile Crisis Unit three times, (3) taken to the Guidance Center for mental/emotional counseling 11 times; (4) taken four times to Williamson Medical Center; and (5) twice taken to the Middle Tennessee Mental Health Institute, residing there on one occasion for six days. Plaintiff has not called Defendant's assertions about the number of times she was assessed or evaluated into question.

Plaintiff's reference to "a 6404" being granted is cryptic, but presumably is a references to October 31, 2013, when she was taken to the Williamson Medical Center. While at the hospital, Dr. George J. Cooper filled out a "Certificate of Need for Emergency Admission," checking the box which read: "Must be transported to an admitting facility or TDMH designated telehealth location for 2nd CON evaluation by sheriff/law enforcement." (Docket No. 35-8 at 19). In her Complaint, Plaintiff alleges that the directive was not followed because she was taken back to the jail, and not taken to the Middle Tennessee Mental Health Institute "till [sic] the next morning around 6:00 a.m." (Docket No. 1, Complaint at 20).

Assuming Dr. Cooper intended that Plaintiff be taken directly to a mental health facility (as opposed to being monitored at the jail and taken to a facility the next morning), Plaintiff's deliberate indifference claim fails because she has not shown that any of the named Defendants were aware of the directive and/or responsible for insuring that the directive was carried out. More fundamentally, she has not shown that any of the Defendants had a culpable state of mind in returning her to the jail after she was released from the hospital around 6:30 p.m. and then taking her to the mental health facility less than 12 hours later.

Plaintiff's final objection relates to what she describes as an "unconstitutional" and

6

"improper strip cell confinement." In the R & R, Magistrate Judge Bryant reviewed the record,[1] on this claim, and wrote:

> Plaintiff alleges that Defendant VandenBosch, identified as a Staff Sergeant, violated her constitutional rights in August 2013 by ordering that Plaintiff be deprived of all her belongings, including clothes, bedding and hygiene materials (Docket Entry No. 1 at 7-14). In his affidavit, Defendant VandenBosch states that in August 2013, Plaintiff Summers "exhibited increasingly erratic behavior" including refusing her psychiatric medication, destroying items issued to her, throwing trash on the floor of her cell, refusing deputies' requests to clean her cell, and refusing to wear clothing (Docket Entry No. 35-8 at 2). Because of this erratic and destructive behavior, Plaintiff Summers was placed on security status on August 19, 2013. Defendant VandenBosch directed deputies to place Plaintiff Summers in a security suit and to remove all personal items from her cell (Id.). Plaintiff Summers remained on this security status from August 19 until August 22, 2013. During this period, for her own safety and security, Plaintiff's access to items in her cell was limited. Although Plaintiff in her complaint alleges that Defendant Oliveri, one of the female deputies, denied her toilet paper for feminine hygiene purposes on occasion during this four-day period, Plaintiff concedes that she was permitted to take showers and provided clean security suits by jail employees on other shifts during this period (Docket Entry No. 1 at 9-13).
>
> To establish an Eighth Amendment conditions-of-confinement claim, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of a violation of a prisoner's Eighth Amendment rights. Maston v. Montgomery County Jail Medical Staff Personnel, 832 F. Supp. 2d 846 (S.D. Ohio 2011). In consideration of the admissions made by Plaintiff in her complaint and the affidavit testimonies of the Defendants (Docket Entry Nos. 35-2, -3, -6, and -8) the undersigned Magistrate Judge finds that the temporary deprivation of Plaintiff's personal items, including certain hygiene products, during the period from August 19 to August 22, 2013, is such that no reasonable jury could find that such deprivation constituted a violation of Plaintiff's rights under the Eighth Amendment. Therefore, such claims against Defendant VandenBosch and Defendant Oliveri should be dismissed.

(Docket No. 65 at 4-5).

The Court agrees with Magistrate Judge Bryant's characterization of the record on this issue, as well as with his ultimate conclusion that, due to the circumstances and brief period involved,

---

[1] This included a review of 13 videotapes from the jail that were submitted by Defendants.

Plaintiff has not shown that she was deprived of the minimal civilized measure of life's necessities so as to establish an Eighth Amendment. See, Ingram v. Cole Cty., 2015 WL 7738371, at *3 (W.D. Mo. Nov. 30, 2015) (no constitutional deprivation where evidence showed "for one detainee, maxi pads were not a sufficient means of controlling menstrual discharge; detainees would run out of toilet paper and have to request more; a detainee had to wait for a few hours to receive pads even though she needed them sooner and her underwear became soiled; and detainees could request to exchange underwear that had become soiled, and sometimes it was exchanged immediately, but sometimes it was not") Stead v. Skinner, 2011 WL 3882809, at *4 (N.D. Ill. Sept. 2, 2011) (although conditions were uncomfortable and embarrassing, no constitutional violation shown where, over the course of five days, detainee who was menstruating was given one maxi pad, bled through her uniform pants, was given another pad a few days later, and had no running water with which to wash); Benjamin v. Fraser, 161 F. Supp. 2d 151, 177 (S.D.N.Y. 2001) (two days without feminine hygiene products and toilet paper insufficient to establish a constitutional violation).

**B. Amended Response (Docket No. 72)**

Plaintiff filed her Amended Response on October 2, 2015. That response includes objections that rehash or amplify the arguments she made regarding her claims of "strip cell confinement"; the failure to immediately transport her from the Williamson County Medical Center to a psychiatric facility; the failure to provide adequate mental health care; and the opening of legal mail.

The Court has considered each of the arguments raised by Plaintiff in her response and finds nothing which alters the conclusions set forth above. Moreover, the Court has conducted a *de novo* review of the entire record and concludes that summary judgment in favor of Defendants is appropriate.

**C. Joint Motion to Ascertain Status (Docket No. 66)**

In their Motion to Ascertain Status, Defendants note that while the Magistrate Judge granted summary judgment in favor Defendant Oliveri, he overlooked the fact that the Motion (Docket No. 33) also encompassed the claims against Defendants Goodwin, Bevans, and Self. "Accordingly, these Defendants seek clarification from the Magistrate Judge as to whether the Report and Recommendation with regard to the Oliveri motion, in which they joined, also applies to the claims brought against them." (Docket No. 66 at 2).

Even though Defendants' Motion to Ascertain Status is directed to Magistrate Judge Bryant, the Court can short-circuit the process. The finding that summary judgment is appropriate to Defendant Oliveri applies as well to Defendants Goodwin, Bevans and Self because the allegations against all of these Defendants are premised on the same alleged conduct, and the conduct of the latter three Defendants has not been shown to be more culpable than that of Defendant Oliveri.

**D. Remaining Defendant**

The ruling on the Motions for Summary Judgment resolves the claims against all Defendants except Tiffany Teague. According to Defendants, Ms. Teague is no longer employed by Williamson County, and, to their knowledge, has not been served.

The Complaint in this action was filed on January 23, 2014. However, the Return of Summons in the record indicates that service was not effected on Ms. Teague.[2]

Rule 4(m) of the Federal Rules of Civil Procedure provides in pertinent part:

If a defendant is not served within 120 days after the complaint is filed, the court –
on motion or on its own after notice to the plaintiff – must dismiss the action without

---

[2] An attempt to serve Ms. Teague at the jail was unsuccessful because she was "no longer employed" there. (Docket No. 59 at 2).

prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). The Court intends to dismiss the claims against Defendant Teague without prejudice unless, within fourteen days, Plaintiff shows good cause for the failure to serve Ms. Teague.

**E. Conclusion**

On the basis of the foregoing, Defendants' Motions for Summary Judgment will be granted, including Plaintiff's claims relating to the alleged unauthorized opening of legal mail. The Court will accept the R & R, modified to show that summary judgment is also granted as to Defendants Goodwin, Bevans and Self. Plaintiff's objections to the R & R will be overruled. Finally, the Court will dismiss the claims against Defendant Ms. Teague without prejudice unless Plaintiff is able to show good cause as to why service has not been effected.

An appropriate Order will enter.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE